

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bascom Giles
Commissioner, General Land Office
Austin, Texas

Dear Sir:

Opinion No. O-1554
Re: Necessity of appointing
surveyor and having survey
made to determine the ex-
istence of alleged vacancy
upon filing of application
to lease land alleged to be
vacant, and effect of failure
to have such survey made.

In your letter of October 4, 1939, you request the opinion of this department upon the following questions:

"1. Where a survey is unnecessary to the determination of the question of vacancy by the Commissioner is it mandatory under House Bill 9 that the Commissioner appoint a surveyor and have a survey made?

"2. If a survey were not made would the rights of an applicant be injured in any way in future litigation on the question of a vacancy?"

In explanation of the foregoing questions, you make the following statements:

"An investigation of certain applications to lease alleged vacant land filed in this of-fice by virtue of House Bill 9 reveals that said applications on their face purport to cover only lands which had been previously patented

Honorable Bascom Giles, Page 2

by the state.

"Investigation of other applications reveals that the Records and maps of this office absolutely negative the existence of a vacancy so far as this office is concerned.

"In either of the instances above mentioned the decision of this office could not and would not be influenced by a survey made on the ground, since our Records show that no vacancy is possible.

"The applicants themselves are not desirous of paying for a survey unless one is necessary to preserve their rights in future litigation on the question of vacancy, and it is the intention of this office to have a survey made in every case where the applicant so desires."

The questions submitted by you necessitate an examination of Chapter 271, Acts 1931, Vernon's Annotated Civil Statutes, Article 5421c, as amended by House Bill 9, Acts 1939, 46th Legislature.

Prior to the amendment of Chapter 271, Acts 1931, by House Bill 9, Acts 1939, there was no provision in the law requiring the Land Commissioner to appoint a surveyor upon the filing of an application to purchase or lease alleged vacant land. Under the 1931 Act prior to its amendment by House Bill 9, the applicant was charged with the responsibility of having a survey made by the county surveyor of the county in which the land was situated or by a licensed land surveyor and the applicant was further charged with the responsibility of having field notes returned to the General Land Office and filed with the Land Commissioner for his approval or rejection.

House Bill 9, however, clearly undertakes to make a comprehensive amendment of Section 6 of the 1931 Act, in that House Bill 9 prescribes definitely and in detail the procedure to be followed by the Land Commissioner in ascertaining whether or not a vacancy actually exists on the ground and in notifying interested parties of such proceedings.

The caption of House Bill 9 in part provides as follows:

"* * * describing and providing for procedure, terms and conditions upon which vacancies may be applied for, sold and leased . . .; pre-

Honorable Bascom Giles, Page 3

scribing procedure to be followed by Com-
missioner in instances where vacancies are
filed upon; providing for findings by the
Commissioner; * * *"

Section 1 (a) of House Bill 9 defines "vacancy"
as follows:

"'Vacancy' when used in this Act, means an
area of unsurveyed school land not in conflict
on the ground with lands previously titled, awarded,
or sold, which has not been listed on the records
of the Land Office as school lands and which on
the date of the filing was neither subject to an
earlier subsisting application to purchase or
lease by a discoverer or claimant nor involved
in pending litigation brought by the State to
recover the same."

Section 1 (c) of House Bill 9 provides that an
applicant to purchase or lease a vacancy shall file written
application in duplicate to purchase or lease with the
county surveyor of the county in which any part of the land
is situated, such application to state the names and ad-
dresses of all owners or claimants of any interest in the
land or any leases adjoining, overlapping or including the
land claimed to be vacant, as ascertained from the records
of the General Land Office, the County Clerk's Office, and
the tax rolls of the county in which the land is situated;
that the application shall also state the names and addresses
of any and all persons known to applicant to be asserting
any right in said land. Under such statute, the County
Surveyor is required to mark the date of the filing of such
application upon both copies of the application, and to
return one copy thereof to the applicant; the applicant is
required, within 10 days after the date of filing with the
surveyor of the county, to file his copy thereof with the
Land Commissioner; the Commissioner is required to notify
the applicant of the estimated cost of proceedings under
the application, and within thirty days after the date of
such notice the applicant is required to make a deposit
with the Commissioner to cover "the cost of all work which

Honorable Bascom Giles, Page 4

may be necessary in order to comply with the request contained in such application."

Section 1 (c) then provides as follows:

"Upon filing of any such application with the Commissioner and upon the making of the required deposit as provided for herein, the Commissioner shall forthwith cause a notice of intention to survey to be mailed to all persons named in the application as interested persons, and at the addresses given therein, and to the Attorney General of Texas. The notices shall be deposited in the Post Office at Austin, Texas, at least ten (10) days prior to the date fixed for the beginning of such survey.

"The Commissioner shall appoint a surveyor to make a survey in accordance with the notice. Such surveyor shall be a surveyor licensed by the State, or the County Surveyor of the County in which the land or a part thereof is situated. The fees and expenses to be paid for such work shall be such as may be fixed by law, or, if not so fixed, then such as the Commissioner and the surveyor may agree upon, but not in excess of such as may be reasonable for the work performed, all of which shall be paid by applicant.

"A written report of the survey with field notes describing the land and the lines and corners so surveyed together with a plat showing the results of such survey shall be filed in the General Land Office within one hundred and twenty (120) days from the filing of the application, unless the time be extended by the Commissioner for good cause shown, which shall be stated in writing and filed as a part of the record of the proceedings, but such extension shall not exceed sixty (60) days. The report shall state the names and the Post-Office addresses of all persons in possession of the land described in the application, and of all persons found by the surveyor to have or claim any interest therein. Any interested party may at his own expense cause any surveying to be done as he deems desirable."

Honorable Bascom Giles, Page 5

Section 1 (c) further provides that:

"Within sixty (60) days after the surveyor
has made his report as provided herein, a hearing
may be held before the Commissioner on the date
fixed in a notice which he shall give to all
persons thought to be interested parties and
to all persons shown by the record of the pro-
ceeding to be interested parties, including the
Attorney General, to determine whether there is
a vacancy."

Section 1 (d) and Section 1 (e) of House Bill
9 then provide for the further steps which are to be taken
by the Land Commissioner in determining whether or not a
vacancy exists and in notifying these interested parties
of his decision.

It appears from the above quoted definition in
House Bill 9 of the term "vacancy" that the Legislature has
plainly limited the operation of the Act to areas of
"unsurveyed school land not in conflict on the ground with
land previously titled, awarded or sold. . ."

It is further apparent from the caption and the
body of the House Bill 9, that the Legislature, in detail
and in mandatory terms, has prescribed the definite procedure
to be followed by the applicant and the Land Commissioner in
(1) proceedings to determine whether or not a vacancy actu-
ally exists on the ground; (2) the filing of field notes
and a hearing, following notice to all interested parties;
and (3) in awarding or rejecting the application to purchase
or lease same after a survey has been made by a surveyor ap-
pointed by the Land Commissioner and field notes have been
filed.

It is further apparent from the above quoted pro-
visions of House Bill 9 that one of the predominant purposes
of the Legislature in enacting House Bill 9 was to guarantee,
in so far as possible, that all persons who claimed an
interest in the alleged vacancy or who might be affected
by the proceedings in regard thereto, should receive notice
of all proceedings occurring in connection with the determi-
nation by survey and hearing of the existence of a vacancy.
Not only is the application required to state the names and

Honorable Basoom Giles, Page 6

addresses of all interested parties, but House Bill 9
further provides that the report of the surveyor ap-
pointed by the Land Commissioner shall state the names
and the post office addresses of all persons in poss-
ession of the land described in the application, and
of all persons found by the surveyor to have or claim
any interest therein. In giving notice of hearing the
Commissioner is required to notify "all persons thought
to be interested parties and to all persons shown by the
record of the proceedings to be interested parties, in-
cluding the Attorney General * * *"

To hold that it is unnecessary for the Com-
missioner to appoint a surveyor and have a survey made,
would deprive the State of Texas, the Land Commissioner,
and all interested parties of the benefit of findings by
a disinterested surveyor with respect to the actual loca-
tion on the ground of the area claimed to be vacant.
A further result of such holding would be to nullify the
intention and effect of that portion of House Bill 9
which requires the surveyor to file field notes and a re-
port and to include in his report the names and addresses
of all persons in possession of and claiming any interest
in the alleged vacant area. Further, to hold that the
appointment of a surveyor and the survey are unnecessary
would result in permitting the finding by the Land Com-
missioner as to the existence of a vacancy to be made without
the information and assistance of field notes describing the
disputed area on the ground.

A statement of the consequences which would result
from a holding that the appointment of a surveyor and a
survey are unnecessary, we believe, are sufficient to es-
tablish that no such result was intended by the Legislature.

In Short v. W. T. Carter & Brother, 126 S. W. (2)
953, the Supreme Court of Texas, in disposing of a con-
tention that land was subject to sale or lease under Chap-
ter 271, Acts 1931, only when such land "appears on the
official Land Office map as unsurveyed land", said:

"A discovery on account of which the prefer-
ence right is given is certainly something more
than the mere finding of what is apparent on the
official land office map. It is a discovery ac-
complished by ascertaining that there is unsur-

Honorable Bascom Giles, Page 7

veyed area of public school land and by bringing it to the attention of the Commissioner in the taking of the several steps prescribed by the statute, that is filing application with the surveyor, causing the survey to be made, and field notes, disclosing the location and defining the bounds of the area, to be prepared and filed in the General Land Office."

The foregoing quotation serves to illustrate that, even prior to the enactment of House Bill 9, the Supreme Court was of the opinion that an actual location on the ground of an alleged vacancy was a necessary step to be taken before the question of whether or not a vacancy existed was determined. Since the decision in Short v. Carter, supra, we find the Legislature in express terms requiring that such survey be made by a surveyor appointed by the Land Commissioner.

It is well settled that the State, through its Legislature, can prescribe such terms, conditions and steps as it desires as conditions precedent to the sale of State land, so long as no provisions of the Constitution are violated. In enacting House Bill 9, the Legislature has, in definite and mandatory language, prescribed that the Commissioner appoint a surveyor to make a survey of an alleged vacant area before granting or rejecting the application to lease or purchase such area.

We are of the opinion, and here hold, that the appointment of a surveyor by the Land Commissioner and a survey of the area by the surveyor so appointed are mandatory steps which must be followed by the Commissioner prior to the granting or rejection of an application to purchase or lease an alleged vacant area. Your first question is, therefore, answered in the affirmative.

In view of the foregoing answer to your first question, we deem it unnecessary to answer the second question propounded by you for the reason that no situation

Honorable Bascom Giles, Page 8

is presented requiring our opinion on such question.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Robert E. Kepke*

Robert E. Kepke
Assistant

REK:BT

APPROVED OCT 27, 1939

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE